COLE, Judge.
This is an appeal from a judgment awarding David J. Carville, Jr., and his wife, Cameron C. Carville, plaintiffs-appel-lees herein, the sums of $7,000 and $10,000, respectively, in general damages resulting from injuries sustained in an automobile accident which occurred on August 22,1975. The vehicle driven by Mr. Carville and occupied by Mrs. Carville was struck by a vehicle driven by Mary Stuart, the insured of The Travelers Indemnity Company, defendant-appellant. It is conceded that Ms. Stuart ran a stop sign controlling the intersection where the accident occurred. Liability was not contested by defendant at trial.
The only issue presented on appeal is whether the amounts awarded for general damages to Mr. and Mrs. Carville are excessive.
The trial court, in written reasons, discussed in detail the injuries and medical treatment of the plaintiffs:
“The accident occurred about 6:15 in the evening. Mr. Carville stated that immediately after the accident he felt stressed, and that his muscles felt knotted, both knees were hurting and he had a knot on his forehead. He saw Dr. John Thomas in the emergency room of the Baton Rouge General Hospital, was treated and released. The following morning he was very sore, and testified that he experienced rather severe pain that day, which was Saturday, and part of Sunday. By Monday, his knees felt better so he went to work, but with considerable difficulty. He saw Dr. Thomas that Monday because his neck had started hurting. He saw Dr. Thomas on two more occasions, about a week apart. By the first week in September his knees were all right, but his neck was hurting and he had noticed some sensitivity on his hand. At this time, he got a neck collar and wore it daily.
*716 “He next saw Dr. Thomas in November, 1975, complaining that his neck was about the same and that his arm was very sensitive. He sought no further medical attention until April, 1976, when he saw Dr. Thomas at the suggestion of his attorney, about a month before trial. He testified that between November and April there was only slight improvement, if any, in his neck but the area of sensitivity in his arm had decreased. He is conscious of guarding his neck at work. He can turn it with some pain. He now has occasional flare-ups with acute pain that subsides in about two days.
“Dr. Thomas testified by deposition that his initial impression was bruised extremities and contusion of forehead, with no fractures. He found quite a few abrasions of the arms, legs and forehead. Soreness in the left arm was noted and the doctor stated that plaintiff could not make a tight fist without discomfort. The injury to both knees was described as a bruise-type injury.
“When the doctor saw this plaintiff three days after the accident, he reported moderate tenderness in the left forearm with weakness of grip and considerable skin sensitivity in lower left forearm. He had begun to complain of pain in the neck area. By the time of the September 2nd visit, plaintiff’s neck complaints had increased, and Dr. Thomas noted limitation of motion in all directions. On September 22nd, Dr. Thomas found his neck considerably improved, with some tenderness on either side and pain and discomfort when he attempted to turn his neck to the right as if to look over his right shoulder. He next saw Mr. Carville on November 4th at which time he was complaining of aching soreness in his shoulder, with occasional sharp pains in neck and right shoulder with strenuous activity. At this time, home traction was recommended. Dr. Thomas noted that pain from working long hours as an accountant would result in the type discomfort described by plaintiff. He did not see this patient again until April, 1976. At that time, he found some remaining tightness and tenderness of the neck. Dr. Thomas diagnosed the injury as cervical sprain syndrome, and classified it as moderate to moderately severe. Dr. Thomas testified that this condition would probably gradually resolve itself within a year (Deposition, Pages 32-34).
“The impact knocked Mrs. Carville into the right door, and injured her right arm and shoulder and the right side of her head. The arm was immobilized; initially she couldn’t raise it higher than her shoulder. It gradually got better where she could raise it higher. It now aches during cold weather and she has trouble with such chores as putting up dishes, cleaning tile, vacuuming and ironing. She stated that her arm was no better at the time of the trial in May than one week after the accident the previous August. She was seen and treated by Dr. Thomas and by Dr. Thomas Campanella, an orthopedic surgeon.
“Dr. Thomas saw her in the emergency room on the day of the accident with primary complaint of pain in the right shoulder, with severe pain on attempts to move the arm. On August 25th, she was severely limited in her attempts to move her arm above ninety degrees. On September 2nd, she had some increase in motion. Dr. Thomas’ examination on September 22nd revealed a grinding or abnormal friction associated with shoulder motion. On a visit of November 4th, she complained of continued aching pains in the right shoulder. He did not see her again until April 4, 1976, when she complained of intermittent pain that was occasionally severe when she attempted to elevate her arm parallel to the floor and above. Dr. Thomas said that prior to the April visit he had thought she had only a badly bruised shoulder. Because of the April complaints, he gave serious consideration to whether she had a rotator cuff injury. He concluded his testimony, however, with the opinion that the proper diagnosis was a deep contusion of the shoulder. He did not recommend surgery *717 and said the condition was not likely to be permanent. He said the condition would probably resolve itself but had no idea how long it might take to resolve (see Deposition, Page 45).
“She first saw Dr. Campanella on March 4, 1976, about six and a half months after the accident. On this examination, she could not raise her arm above ninety degrees. He found ‘damage’ to the rotator cuff, and explained that if a contusion is severe enough, scar tissue formations can be a source of the type pain being experienced by Mrs. Car-ville. The present disability of ten percent of the shoulder should ‘straighten itself out in a year or two’ (Page 7 of Deposition).
“Dr. Campanella saw the patient on one other occasion, April 28, 1976, and noted some traumatic arthritis. He, too, saw no need for surgery.”
The standard of appellate review on quantum questions has been the subject of recent discussion by the Louisiana Supreme Court. See Coco v. Winston Industries, 341 So.2d 332 (La.1976). In Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974), in addressing the subject, the Court, said:
“The appellate review of awards for general damages is limited to determining whether the trial court abused its great discretion. The adequacy or inadequacy of an award should be determined on the basis of the facts and circumstances peculiar to the case under review, having in regard also that the trier of fact has the advantage of seeing the witnesses and evaluating their testimony, including that of residual pain. * * * [A]n abuse of trial-court discretion must be clearly demonstrated by the record before an appellate court will tamper with an award of general damages.” (304 So.2d at 352).
When we test the record before us against the admonition that an abuse of trial court discretion must be clearly demonstrated before we can tamper with the awards, we are left with the conclusion that the awards of $7,000 and $10,000 to the plaintiffs in this case are reasonably supported by the record as characterized above and are not violative of the “much discretion” given the trial judge on such issues. LSA-C.C. art. 1934(3). Having found that the record does not support the conclusion that the lower court abused its much discretion, this Court is without prerogative to adjust the awards downward in accordance with the guidelines set forth in Coco v. Winston Industries, supra.
For the foregoing reasons, the judgment of the trial court is affirmed, at appellant’s cost.
AFFIRMED.